UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                        :

RAFAEL BATISTA,
                        Plaintiff,

        -against-

THE WALDORF ASTORIA,
                     Defendant.

------------------------------------------------------------X

<div style="border:1px solid black;">
USDC SDNY<br>
DOCUMENT<br>
ELECTRONICALLY FILED<br>
DOC #:_____<br>
DATE FILED: _07/20/2015_
</div>

13 Civ. 3226 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, United States District Judge:

      Plaintiff Rafael Batista alleges employment discrimination and retaliation claims against his employer Defendant The Waldorf Astoria ("Defendant" or the "Hotel").   Defendant now moves for summary judgment.   For the reasons stated below, Defendant's motion is granted in its entirety.

**BACKGROUND**

**I.     FACTUAL BACKGROUND**

      Unless otherwise noted, the following facts are taken from the parties' statements filed pursuant to Local Rule 56.1 and from Plaintiff's Declaration, dated October 24, 2014.   The facts are undisputed or taken in the light most favorable to Plaintiff.

      Plaintiff is a Hispanic man of Dominican descent who is employed as a steward at one of the Hotel's restaurants.   His job responsibilities include dishwashing, keeping the kitchen clean and removing garbage.   Plaintiff is a member of an industry-wide union.

      Simi Sangari, a woman of South Asian descent, worked as Stewarding Supervisor from approximately August 2007 until (according to the Hotel) June 2011.   Sangari was supervised

by Robert Castillo, a Hispanic man of Dominican descent who worked as Director of Stewarding.   Mark Pandaleon, a white man, worked as Stewarding Manager in 2010, was promoted to Director of Stewarding in approximately March 2013 and -- according to the Hotel -- worked at the Hotel until March 2014.

**A.      Incidents in August and September 2008**

Plaintiff alleges that, on approximately August 20, 2008, Ryan Alday -- a sous chef employed by the Hotel from October 2005 to August 2009 -- threw a knife at Plaintiff's head. On approximately September 20, 2008, Alday allegedly refused to share with Plaintiff food prepared for Hotel employees and directed a racial slur at Plaintiff.

Plaintiff alleges that Alday "repeatedly and continuously subjected [him] to racial slurs" and "target[ed him] based on [his] race and national origin."   Plaintiff alleges Alday did so "because, upon information and belief, he received orders" to target Plaintiff "from Ms. Sangari and Mr. Castillo."

Plaintiff reported these incidents to the Hotel's Human Resources Department but, "upon information and belief, no investigation took place and nothing was done to rectify the situation."

**B.      June 2010 Incident**

On June 28, 2010, Plaintiff and Bright Brown, an African American who also worked as a steward at the Hotel, worked together in the restaurant's kitchen.   On June 29, 2010, Castillo discovered considerable garbage that had been left in the kitchen and directed Sangari to give Verbal Warnings -- defined by the Hotel as a type of "corrective communication" given to employees -- to Plaintiff and Brown.   Plaintiff contends that he was not tasked with garbage removal on June 28 and that the Hotel improperly wrote him up for failure to remove the garbage

2

when it was not his responsibility to do so.   Plaintiff states that he complained to the union and to the Hotel about this incident, but that the Hotel took no action.

Plaintiff and Brown protested the Verbal Warnings, and, as a result, the Hotel reduced the Warnings to Coach & Counselings -- "a form of communication to the employee [that is] not considered a form of discipline by the Union."   The parties agree that no discipline followed from the Coach & Counseling as there were no further related infractions.   Plaintiff and Brown asked the Hotel to rescind the Coach & Counselings, but it refused to do so.   Plaintiff states that he "find[s] these coach and counseling sessions to be forms of harassment against me and other employees."

### C.     July 2010 Incident

Plaintiff alleges that in July 2010, Sangari yelled at him, "Fucking Dominican . . . You're just a Black from Haiti!"   Plaintiff asserts that the slurs were made after Plaintiff had failed to take dishes to the fourth floor as Sangari had requested.   Plaintiff reported the incident, both orally and in writing, to the Hotel's Human Resources Department, including a signed statement by witnesses, but the Hotel "again refused to rectify or address the situation."

### D.     December 2010 Incident

Plaintiff alleges that, on approximately December 11, 2010, Pandaleon physically blocked him from using the restroom and insisted that he carry heavy food trays without help from any co-workers.   Pandaleon allegedly pushed Plaintiff, caused him to fall and shouted, "Get to work!"   When Plaintiff asked Pandaleon why he had pushed him, Pandaleon responded, "So you can work."   Plaintiff then called the police and his union representative.   Pandaleon was not arrested, and no criminal charges were filed against him.   Plaintiff alleges that, "[u]pon

3

information and belief," Pandaleon pushed him "because of [his] race [and national origin] and because Mr. Pandaleon received orders and instructions from Ms. Sangari to harass and attack [him]."

>    **E.    Other Allegations**

In addition to these specific incidents, Plaintiff also alleges that he was subjected to mistreatment by Sangari and other supervisors at the Hotel.   First, he alleges that Sangari "repeatedly changed [his] schedule every time [his] schedule would be posted and she would reduce [his] hours as well."   Second, Plaintiff also asserts that "Ms. Sangari continuously called [him] a '[F]ucking Dominican' and '[F]ucking Latino.'"   Plaintiff alleges that he reported these comments to the Hotel, but the Hotel "never shared the results of the alleged investigation it conducted."   Plaintiff states that, as a result, he "felt dissuaded from reporting any future discriminatory conduct" to the Hotel.   Third, Plaintiff is "of the belief that a group of managers of the [Hotel] covered for one another and their discriminatory conduct against persons like [him]self."   Fourth, Plaintiff alleges that the Hotel continues to discriminate against him, at least in part in retaliation for discrimination complaints he has filed.   In particular, Plaintiff states that his "schedule constantly changed on or around July 2013" and that he "was the only employee who came into work at five different shift times during the week."

## II.    PROCEDURAL HISTORY

>    **A.    Administrative Proceedings**

On July 23, 2010, Plaintiff filed discrimination charges with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC").   In a section titled "Acts of Discrimination" on the NYSDHR form, Plaintiff

indicated that he was harassed or intimidated, given responsibilities different or worse than employees with the same position and was given a disciplinary action or negative performance evaluation.   Plaintiff's statement included the following:

> On July 12, 2010, . . . . [a]round 9:00PM[,] Mrs. Simi Sangari came down again and told me to take all the dirty stuff and go to wash them.   I asked her if I should go to the 2nd floor and she said NO. Then I asked her if I should go to the 3rd floor, and against she said NO.   Then she said to the 4th Floor, where there wasn't anybody. She began harassing me and making my work difficult.   A few moments later, she told me "F … . Dominican, you are a black g[u]y from Haiti."   She threatened me saying that if I didn't finish my work, she would write me up again.
>
> I feel discriminated against due to my race/color and my national origin.

In the administrative proceedings, Plaintiff also stated that Sangari used a racial slur in June 2010, and that Pandaleon pushed Plaintiff in December 2010.   Plaintiff did not mention the alleged 2008 incidents involving Alday.   On October 25, 2012, the NYSDHR dismissed the charges finding no probable cause, and on February 11, 2013, the EEOC -- reviewing and adopting the NYSDHR Determination and Order -- dismissed the charges and issued a Notice of Right to Sue.

### B.    Instant Action

On May 10, 2013, Plaintiff -- proceeding pro se -- filed this action.   The original complaint indicated that (1) Plaintiff was suing the Hotel for discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and the New York City Human Rights Law, N.Y. City Admin Code § 8-101 et seq., and (2) the discriminatory conduct complained of included failure to promote and unequal terms and conditions of employment. Where asked to describe the facts of his case, Plaintiff wrote, "Discrimination for age . . . [and

national] origin."   The complaint provided no further details of Plaintiff's allegations but included the EEOC Notice of Right to Sue as an attachment.

Plaintiff, still pro se, filed an Amended Complaint on May 24, 2013.   The Amended Complaint indicated that (1) Plaintiff was suing for discrimination pursuant only to the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., and (2) the discriminatory conduct complained of included unequal terms and conditions of employment and verbal harassment. Plaintiff indicated that the alleged discriminatory acts occurred on July 2010 and that he believed that Defendant "is not still committing these acts against me."   He also stated that Defendant discriminated against him on the basis of his age, race -- through "words like 'you black' guy" -- and national origin -- through words such as "fucking Dominican."   Plaintiff also wrote the following:

> I was harassed by my manager.   I was pushed around to do job actions that were not part of my job.   When I questioned why, she simply replied "[Y]ou are a fucking Dominican, a black guy from Haiti."

On March 3, 2014, after obtaining counsel, Plaintiff filed a Second Amended Complaint, which is now the operative complaint.   Plaintiff asserts three claims against Defendant: (1) discrimination and retaliation, in violation of 42 U.S.C. § 1981; (2) discrimination on the basis of race and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; and (3) retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

## STANDARD

The standard for summary judgment is well established.   Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S.

242, 248 (1986). The court must construe the evidence in the light most favorable to the

nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *See*

*id*. at 255.

"[E]ven in the discrimination context, a plaintiff must provide more than conclusory

allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of*

*Avon*, 118 F.3d 106, 110 (2d Cir. 1997); *accord Jantz v. Emblem Health*, No. 10 Civ. 6076, 2012

WL 370297, at *11 (S.D.N.Y. Feb. 6, 2012) (holding that plaintiff's mere "conclusory

statements, conjecture, or speculation by the party resisting the motion will not defeat summary

judgment"). "To satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not

conclusory allegations. To the extent that these affidavits contain bald assertions and legal

conclusions -- for example, that [a co-worker] 'was always making racial slurs about minorities,'

and that [the plaintiff] 'was working in a hostile or abusive working environment' -- the district

court [can] properly refuse[] to rely on them." *Schwapp*, 118 F.3d at 111 (citations omitted);

*accord Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010) ("Plaintiffs' affidavits on this point

lack specifics and are conclusory; a party cannot create a triable issue of fact merely by stating in

an affidavit the very proposition they are trying to prove."); *Fletcher v. Atex, Inc.*, 68 F.3d 1451,

1456 (2d Cir. 1995) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a

genuine issue of material fact where none would otherwise exist." (internal quotation marks

omitted)).

In construing complaints by plaintiffs proceeding pro se, the Court "appl[ies] a more flexible standard to evaluate their sufficiency than [it] would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Thus, the Court is obligated to construe pro se pleadings with "'special solicitude,' interpreting the complaint to raise the 'strongest [claims] that [it] suggest[s].'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (alterations in original) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)).

## DISCUSSION

## I.    TITLE VII HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff's hostile work environment claim under Title VII consists of four sets of allegations: (1) acts that took place before the Title VII limitations period, (2) acts described in Plaintiff's EEOC charge, (3) the December 2010 incident involving Pandaleon and (4) other allegations for which Plaintiff does not identify specific dates.    For the following reasons, Plaintiff's hostile work environment claim is dismissed.    As the applicable law differs for each set of incidents, however, they are addressed separately below.

### A.    Incidents Before the Limitations Period

Plaintiff's Title VII claim for hostile work environment is dismissed as time barred to the extent it relates to incidents before September 26, 2009 -- the date on which the Title VII limitations period began.    "Title VII's administrative exhaustion provision requires that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act."

8

*McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1)).   Plaintiff commenced his EEOC proceeding on July 23, 2010.   Three hundred days earlier was September 26, 2009.   Therefore, only discriminatory acts committed on or after September 26, 2009 are actionable.

"When, as in this case, a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct."   *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004).   "For statutes of limitations purposes, incidents of employment discrimination must be categorized either as discrete acts or continuing violations."   *Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) (citing *Nat'l Passenger R.R. Corp. v. Morgan*, 536 U.S. 101, 114-16 (2002)). "Continuing violation arguments are disfavored and entertained only upon a showing of compelling circumstances."   *Fleming*, 419 F. Supp. 2d at 465; *accord Quadrozzi Concrete Corp. v. City of New York*, No. 03 Civ. 1905, 2004 WL 2222164, at *8 (S.D.N.Y. Sept. 30, 2004), *aff'd*, 149 F. App'x 17 (2d Cir. 2005).

"A discrete act of discrimination is time barred if it occurred prior to the applicable limitations period."   *Fleming*, 419 F. Supp. 2d at 465 (citing *Nat'l Passenger R.R. Corp.*, 536 U.S. at 113).   If, however, "a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."   *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (Sotomayor, J.) (internal alteration and quotation marks omitted).   "Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period."

9

*Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).

To establish a continuing violation, "the claimant must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). But "a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell*, 23 F.3d at 704.

In *McGullam v. Cedar Graphics, Inc.*, the Second Circuit outlined how to assess the timeliness of hostile work environment claims. Courts should determine (1) "whether [the plaintiff] alleged any discriminatory act within the limitations period," 609 F.3d at 76, and (2) whether the acts that took place within the limitations period "were sufficiently related to" acts outside of the limitations period "to be part of the same alleged hostile work environment practice," *id.* at 77. Courts should make an "individualized assessment" of relatedness, considering whether "as a matter of law that the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment." *Id.* at 77, 78 (quoting *Rowe v. Hussmann Corp.*, 381 F.3d 775, 781 (8th Cir. 2004). If the incidents are sufficiently related, then the acts that took place outside of the limitations period may be considered on the merits as part of the hostile work environment claim. *See id.*

10

Here, Plaintiff has alleged three specific incidents after the September 26, 2009 cutoff date that could be construed as contributing to a hostile work environment on the basis of Plaintiff's race: (1) the July 2010 incident in which Sangari directed racial slurs at Plaintiff, which followed (2) the June 29, 2010, incident in which Sangari was instructed to give Plaintiff a Verbal Warning for failing to remove trash left in the restaurant kitchen, and (3) the December 11, 2010, incident in which Pandaleon allegedly pushed Plaintiff.   The issue is whether these incidents in 2010 were "sufficiently related" to the two alleged incidents before the limitations period: (1) the August 20, 2008, incident in which Alday threw a knife at Plaintiff's head and (2) the September 20, 2008, incident in which Alday used a racial slur against Plaintiff and refused to share food with Plaintiff.

For "continuing violations" purposes, neither of the 2008 incidents are "sufficiently related" to the 2010 incidents to make them a part of the same hostile work environment and bring the older incidents within the statute of limitations.   The two sets of events involved different actors and are remote in time to each other.   The earlier actions involved Alday, who stopped working at the Hotel before the commencement of the limitations period.   The later actions involved Sangari and Pandaleon.   The two sets of incidents are almost two years apart, suggesting they were not a part of an ongoing policy of discrimination.   Indeed, the record does not contain any evidence that the December 2010 incident was motivated by any discriminatory animus.   Also, the 2008 knife-throwing incident differs in type and severity from the others, also suggesting they are not related.

   Plaintiff argues that the "record is replete of numerous, repeated and continuous acts of discrimination that occurred throughout [his] employment."   In particular, Plaintiff alleges that

Alday "repeatedly and continuously called the Plaintiff racial slurs" and that "upon information and belief, no investigation took place and nothing was done to rectify the situation."   Plaintiff contends that these "specific and related incidents of discrimination . . . were clearly permitted by Defendant . . . to continue unremedied for so long as to amount to a discriminatory policy or practice."   This argument relies on generalizations and unsupported assertions based solely on Plaintiff's self-serving testimony.   They are insufficient to show that the 2008 acts are "sufficiently related" to the 2010 incidents.   Accordingly, Plaintiff's hostile work environment claim, as it relates to incidents that took place before September 26, 2009, is dismissed as time barred.

### B.      Remaining Allegations

The remainder of Plaintiff's hostile work environment claim is dismissed because no reasonable jury could find in Plaintiff's favor, even assuming the facts as he asserts them. "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult."   *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).   Nevertheless, "Title VII does not establish a general civility code for the American workplace."   *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

"To prevail on a hostile work environment claim, a plaintiff must demonstrate: (1) that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."   *Schwapp*, 118 F.3d at 110 (internal quotation marks and alterations omitted).   A plaintiff must "demonstrate that the conduct occurred because of her [membership in a protected class]."   *Alfano v. Costello*,

294 F.3d 365, 374 (2d Cir. 2002).    Although "[c]ore hostile work environment cases involve misconduct that is both frequent and severe," *id.*, the Second Circuit has "allowed hostile environment claims to proceed only where a plaintiff has shown either one or more extraordinarily severe incidents, or a steady barrage of opprobrious racial comments," *Chansamone v. IBEW Local 97*, 523 F. App'x 820, 823 (2d Cir. 2013) (summary order).

    "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.    Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment."    *Schwapp*, 118 F.3d at 110-11 (internal quotation marks and citations omitted).    "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations and quotations omitted); *accord La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 210 (2d Cir. 2010) (summary order) ("Ordinarily, a race-based hostile work environment claim must involve more than a few isolated incidents of racial enmity.") (citations omitted).

    Setting aside time-barred allegations, Plaintiff points to three specific incidents in support of his hostile work environment claim: (1) the June 2010 trash removal incident, after which Plaintiff received Coach & Counseling sessions, (2) the July 2010 incident in which Sangari used racial slurs and (3) the December 2010 altercation in which Pandaleon pushed Plaintiff. Plaintiff alleges that explicitly discriminatory remarks were made only during the July 2010

incident.    Concerning the December 2010 incident, however, Plaintiff alleges, "[u]pon

information and belief," that "Pandaleon pushed Plaintiff because of his race[ and] national

origin" because Pandaleon "received orders and instructions from [] Sangari to harass and attack

Plaintiff."    Plaintiff also makes general allegations that Sangari repeatedly changed his work

schedule and reduced his hours and that she "continuously" used racial and ethnic slurs against

him.

Taken together, Plaintiff's allegations are insufficient to defeat Defendant's motion for

summary judgment.    Plaintiff alleges only one specific incident in which discriminatory

remarks were made.    He cannot save his claim with unsubstantiated speculation that he was

treated poorly on other occasions because of his race and national origin.    *See, e.g.*, *Daniel v. T*

*& M Protection Res. LLC*, No. 13 Civ. 4384, 2015 WL 728175, at * 10 (S.D.N.Y. Feb. 19, 2015)

("[Plaintiff has provided no evidence (e.g., contemporaneous or even after-the-fact statements by

[the alleged offender]) to support the inference that [the alleged conduct] . . . was driven by

prohibited animus."); *Thomas v. Bergdorf Goodman, Inc.*, No. 03 Civ. 3066, 2004 WL 2979960,

at *8 (S.D.N.Y. Dec. 22, 2004) (granting employer summary judgment where "Plaintiff's own

Declaration is further evidence that she is merely speculating as to the reasons underlying the

alleged incidents of harassment").

Adding a general allegation -- that Sangari "continuously" called Plaintiff "[F]ucking

Dominican" and "[F]ucking Latino" -- does not transform Plaintiff's case into one of pervasive

discriminatory conduct.    *See Thomas v. New York City Health & Hospitals Corp.*, No. 02 Civ.

5159, 2004 WL 1962074, at *12 (S.D.N.Y. Sept. 2, 2004) (granting employer summary

judgment on claim where [1] "only specific relevant conduct alleged" was supervisor's

"endorsement of a racial epithet" and [2] "purely conclusory" allegations about disparate

treatment); *Adeniji v. Admin. for Children Servs., NYC*, 43 F. Supp. 2d 407, 423 (S.D.N.Y.)

(holding that proof of one discriminatory comment and conclusory allegations were "insufficient

to state a prima facie case of national origin hostile environment discrimination), *aff'd sub nom.*

*Adeniji v. Admin. for Children's Servs.*, 201 F.3d 430 (2d Cir. 1999).   The word "continuously"

is vague and does not communicate the quantity, frequency or cumulative effect on Plaintiff's

work environment; nor does it distinguish "a few isolated incidents of racial enmity" from the

unlawful "steady barrage."   *Schwapp*, 118 F.3d at 110-11

Although "even a single episode of harassment, if severe enough, can establish a hostile

work environment," *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir.

1999), *abrogated on other grounds by Burlington N. Santa Fe Ry. Co. v. White*, 548 U.S. 53

(2006), "the harassment [must be] of such quality or quantity that a reasonable employee would

find the conditions of her employment altered for the worse," *Whidbee v. Garzarelli Food*

*Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000).   *Accord Harris v. Wackenhut Servs., Inc.*, 419

F. App'x 1, 2 (D.C. Cir. 2011) (noting that "a few isolated incidents of offensive conduct do not

amount to actionable harassment").   Even construed in a light most favorable to Plaintiff, the

July 2010 incident is insufficient to sustain a hostile work environment claim.   *See Fleming v.*

*MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010) ("Viewing the facts in the light most

favorable to [plaintiff] and drawing all inferences in her favor, while this comment may be seen

as severe, it is isolated and, standing alone, is not the type of 'intolerable alteration' of her

working conditions that substantially interferes with her ability to do her job."   (citing

*Mathirampuzha v. Potter*, 548 F.3d 70, 79 (2d Cir. 2008)).

Thus, the remainder of Plaintiff's Title VII claim for hostile work environment is dismissed for failure to adduce evidence from which a reasonable jury could find severe or pervasive discrimination sufficient to alter the conditions of his work environment.

## II.    TITLE VII CLAIM FOR RETALIATION

Defendant's motion for summary judgment is granted on Plaintiff's retaliation claim because no reasonable jury could find a causal link between Plaintiff's protected activities and any adverse employment actions he allegedly suffered.

Under Title VII, it is unlawful for "an employer to discriminate against any of his employees" for "oppos[ing] any practice made an unlawful employment practice by this subchapter."   42 U.S.C. C 2000e-3(a).    To establish a prima facie case of retaliation, a plaintiff must show that "(1) []he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging h[im]; and (3) there exists a causal connection between the protected activity and the adverse action."   *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007).

An employee's complaints to his employer or with the EEOC or another government agency qualify as protected activities under Title VII, and therefore satisfy the first element. *See Raniola v. Bratton*, 243 F.3d 610, 624-25 (2d Cir. 2001) (Sotomayor, J.).

To establish the second element, the plaintiff must show that the employer took a materially adverse employment action against him.   *Burlington*, 548 U.S. at 68.   An employment action is "adverse" if the plaintiff "endures a 'materially adverse change' in the terms and conditions of employment."   *Galabya v. N.Y.C. Bd. of Ed.*, 202 F.3d 636, 640 (2d Cir. 2000); *accord Burlington*, 548 U.S. at 68 (holding that employment action is "materially

adverse" if it "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'").   Courts must consider "the alleged acts of retaliation . . . both separately and in the aggregate."   *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).   "[M]aterial adversity is to be determined objectively, based on the reactions of a reasonable employee."   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2012).   Generally, "petty slights, minor annoyances, and simple lack of good manners" cannot be considered adverse actions.   *Burlington*, 548 U.S. at 68.   On the other hand, "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy th[at] prong of the retaliation prima facie case."   *Richardson*, 180 F.3d at 446.

Regarding the third element of a prima facie case, for an action to violate Title VII, "a retaliatory motive must be . . . at least a 'substantial' or 'motivating' factor behind the adverse action."   *Raniola*, 243 F.3d at 625 (internal quotation marks omitted).   "A plaintiff may prove that retaliation was a 'substantial' or 'motivating' factor behind an adverse employment action either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant."   *Id.* (internal quotation marks omitted).

Plaintiff here has adduced evidence that he engaged in "protected activities":   Plaintiff's internal complaints to the Hotel following, respectively, the incidents in August 2008, September 2008, June 2010 and July 2010; Plaintiff's filing of discrimination charges with the NYSDHR and EEOC in July 2010; and Plaintiff's call to the police following the December 2010 incident.

For purposes of this motion only, all of these are assumed to be protected activities under Title VII.

Plaintiff alleges that he suffered "numerous adverse actions," including "unfounded disciplinary warnings," "continuous[]" changes to his work schedule, assignments of "inordinate amounts of additional work" and an "increasingly hostile work environment."   To the extent that they have no support in the record apart from Plaintiff's assertions, these "bald allegations" are insufficient to defeat Defendant's motion.   To the extent Plaintiff alleges a hostile work environment as retaliation, these allegations fail and are dismissed for the same reasons his hostile work environment claim is dismissed.

Although Plaintiff does not identify them as adverse actions, four alleged incidents are considered below as possible adverse actions: (1) the Coach & Counseling he received following the June 2010 incident; (2) the alleged scheduling changes; (3) the altercation with Pandaleon in December 2010; and (4) the incident with Sangari in July 2010.

First, courts in this Circuit have held that counseling notices do not constitute adverse actions.   *Loucar v. Boston Market Corp.*, 294 F. Supp. 2d 472, 481 (S.D.N.Y. 2003); *accord Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) ("Courts in this district have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions."), *aff'd in part, appeal dismissed in part*, 51 F. App'x 44 (2d Cir. 2002).   Here, Plaintiff does not allege that any disciplinary action or "'materially adverse change' in the terms and conditions of employment" flowed from the Coach & Counseling he received.   Thus, no reasonable factfinder could conclude that the June 2010 Coach & Counseling constituted an adverse action.

Second, Plaintiff's allegations concerning schedule changes are insufficient to demonstrate an adverse action in the context of his retaliation claim.   Plaintiff alleges that "Sangari repeatedly changed his schedule every time the schedule would be posted and she would reduce his hours as well" and that these shift changes "threatened his second position with the Hyatt Hotel because these changes made it difficult for him to report to this position." These allegations are too general and lack any "concrete particulars."   *See Schwapp*, 118 F.3d at 111.   Plaintiff's only specific allegation involves July 2013 schedule changes, but this incident is too remote in time from Plaintiff's protected activities to infer a retaliatory motive.   *See Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005) (holding that plaintiff "cannot demonstrate the causal nexus required to state a prima facie retaliation claim" where "more than a year passed between plaintiff's accusations before . . . the initiation of disciplinary proceedings").

Third, Pandaleon's alleged assault in December 2010 cannot qualify as an adverse action because there is no allegation that it permanently altered Plaintiff's working conditions, as would a demotion, decrease in pay or termination.   The Second Circuit reached the same conclusion about much worse violence by a supervisor.   *See Mathirampuzha*, 548 F.3d at 79 (holding that supervisor's "aggressive conduct toward the plaintiff" -- where supervisor grabbed, punched, spat at plaintiff and poked plaintiff's eye -- "was not an adverse employment action").

Fourth, while a reasonable jury could find that Sangari's alleged use of racial slurs in July 2010 was an adverse action, *see Rivera*, 743 F.3d at 26-27 (holding, where supervisor used racial slur against plaintiff, that "discriminatory harassment from a supervisor may alone suffice to establish an adverse employment action"), Plaintiff fails to adduce any evidence that this incident

19

was in reaction to any of his protected activities.   *See Stoddard v. Eastman Kodak Co.*, 309 F.

App'x 475, 480 (2d Cir. 2009) (summary order) ("[W]here there is nothing other than []

temporal proximity invoked to establish a retaliatory intent, the causal relationship is not

established.").

    For these reasons, Defendant's motion on Plaintiff's retaliation claim is granted.

## III.    SECTION 1981 CLAIM

    For the following reasons, Defendant's motion on Plaintiff's § 1981 claim is also granted

in its entirety.

### A.    Statute of Limitations

    Defendant's motion for summary judgment on Plaintiff's § 1981 claim based on conduct

before May 10, 2009, is granted as time barred.   "[T]he statute of limitations for a § 1981 claim

is four years . . . ."   *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 328 (2d Cir. 2011)

(summary order) (citing 42 U.S.C. § 1981); *Burgis v. Dep't of Sanitation City of N.Y.*, No. 13

Civ. 1011, 2014 WL 1303447, at *4 (S.D.N.Y. Mar. 31, 2014) ("Although § 1981 does not

contain a statute of limitations, the Supreme Court has held that the four-year federal 'catch-all'

statute of limitations applies." (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382

(2004)).   Plaintiff first raised his § 1981 claim in the Second Amended Complaint, filed March

3, 2014.   However, Plaintiff filed the original complaint in this action on May 10, 2013, while

proceeding pro se.   As the original complaint alleged that Defendant discriminated against

Plaintiff on the basis of his color and national origin, its language can be construed -- with

"special solicitude" -- to raise a § 1981 claim.   *Hill*, 657 F.3d at 122; *but see Adams v. New

York State Educ. Dep't*, 752 F. Supp. 2d 420, 469 (S.D.N.Y. 2010) (holding that § 1981 claim

was time barred, where plaintiff -- after filing first two complaints pro se -- retained counsel and first raised claim in third amended complaint, filed after limitations period had run), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012).   Accordingly, this claim as it relates to conduct before May 10, 2009 -- four years prior to the commencement of this action -- is time barred.

### B.    Preclusive Effect of Administrative Determination

As Plaintiff's § 1981 claim concerning the incidents in June, July and December 2010 is precluded by the NYSDHR's determination of no probable cause, Defendant's motion for summary judgment on this portion of the claim is granted.

"[R]es judicata and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies . . . when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law. . . ." *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 117 (2d Cir.), *cert. denied*, 484 U.S. 825 (1987) (quotations and citations omitted).   This rule applies to § 1981 claims previously evaluated by the NYSDHR.   *See id.* at 118 n.13; *James v. City of New York*, No. 01 Civ. 30, 2003 WL 21991591, at *4 (S.D.N.Y. Aug. 20, 2003) (NYSDHR determination of no probable cause had preclusive effect on § 1981 claim).   Such preclusion applies unless the plaintiff establishes that he did not have an adequate opportunity to litigate the issues in question before the NYSDHR. *See DeCintio*, 821 F.2d at 116-17 (holding that NYSDHR "no probable cause" determination precluded § 1981 claim where plaintiff failed to "establish[] that he did not have a full and fair opportunity to litigate").

Here, the NYSDHR rejected the same allegations concerning the 2010 incidents that Plaintiff presents here.   Plaintiff does not argue that he lacked a full and fair opportunity to litigate these issues before the NYSDHR.   Instead, he asserts that NYSDHR determinations do not have preclusive effect on his § 1981 and Title VII claims.   As *DeCintio* made clear, such determinations preclude § 1981 -- but not Title VII -- claims.   *See DeCintio*, 821 F.2d at 114-15, 117-18.   Plaintiff offers no authority to the contrary.   Accordingly, Plaintiff's § 1981 claim, insofar as it relates to the 2010 incidents, is precluded by the NYSDHR's finding of no probable cause.

### A.    Merits of the § 1981 Claim

Even if it were not -- at least in part -- time barred or subject to preclusion, Plaintiff's § 1981 claim fails on the merits in its entirety.

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004) (citation omitted).

"To establish a claim under 42 U.S.C. § 1981, plaintiff must show that (1) []he is a member of a racial minority group, (2) Defendant[] intended to discriminate against h[im] on the basis of race, and (3) this discrimination concerned one of the activities enumerated in 42 U.S.C. § 1981, which include the rights to make and enforce contracts, to sue, and the right 'to the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Jenkins v. NYC Transit Auth.*, 201 F. App'x 44, 45 (2d Cir. 2006) (quoting 24 U.S.C. § 1981 and *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)).   "The same 'core substantive standards that apply to claims of discriminatory conduct in violation of

22

Title VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.] are also applicable to claims of discrimination in employment in violation of § 1981 . . . .'"   *Wiercinski v. Mangia 57, Inc.*, No. 14-1753-CV, 2015 WL 2402654, at *5 (2d Cir. May 21, 2015) (quoting *Patterson*, 375 F.3d at 225; *accord Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) ("Claims of employment discrimination under § 1981 are analyzed under the same framework that applies to Title VII claims and claims under § 1983.").   Consequently, for the same reasons that Plaintiff's claims under Title VII fail, Plaintiff's § 1981 claim fails on the merits.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in its entirety.   The Clerk of Court is directed to close the motion at Docket No. 51 and to close the case.

SO ORDERED.

Dated: July 20, 2015
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE